UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SHULI CHIU and AMANDA KIM, | * | |
| Derivatively on Behalf of OVASCIENCE, | * | |
| INC., | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 17-cv-11382-IT |
| | * | |
| MICHELLE DIPP, RICHARD ALDRICH, | * | |
| JEFFERY D. CAPELLO, MARY FISHER, | * | |
| JOHN HOWE, III, MARC KOZIN, and | * | |
| JOHN SEXTON, | * | |
| | * | |
| Defendants, | * | |
| | * | |
| and | * | |
| | * | |
| OVASCIENCE, INC., | * | |
| | * | |
| Nominal Defendant. | * | |

MEMORANDUM & ORDER

April 13, 2018

TALWANI, D.J.

Plaintiffs Shuli Chiu and Amanda Kim, shareholders of OvaScience, Inc. ("OvaScience"),

bring this action derivatively on behalf of OvaScience against current and former officers and

members of OvaScience's board of directors, Michelle Dipp, Richard Aldrich, Jeffery D.

Capello, Mary Fisher, John Howe, III, Marc Kozin, and John Sexton. Plaintiffs assert claims of

breach of fiduciary duties, unjust enrichment, abuse of control, waste of corporate assets, and

violations of Securities Exchange Act Section 14(a) and Rule 14a-9. Am. Compl. ¶¶ 228-250

[#17].

Defendants have moved to dismiss the <u>Amended Complaint</u> [#17] for failure to plead demand futility pursuant to Federal Rule of Civil Procedure 23.1(b)(3). Mem. in Supp. of Mot. to Dismiss Am. Compl. 8 [#22]. They have also moved to dismiss the sole federal claim for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) and the remaining state claims for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). <u>Id.</u> Finding for the reasons set forth below that Plaintiffs have failed to state a federal claim upon which relief can be granted, and that Plaintiffs' state law claims should be dismissed for lack of subject matter jurisdiction, the Defendants' motion to dismiss is ALLOWED.[1]

I.   <u>Background as Alleged in the Complaint</u>

OvaScience is a fertility company that develops the in vitro fertilization treatment, AUGMENT, which is the company's "core product." Am. Compl. ¶¶ 42, 163. The AUGMENT treatment involves implanting the mitochondria of immature egg cells from outer ovarian tissue into mature egg cells, with the goal of improving the success rate of in vitro fertilization. <u>Id.</u> ¶¶ 40, 43. In February 2013, OvaScience initiated a study evaluating AUGMENT in the United States. <u>Id.</u> ¶ 45. In September of that year, the Food and Drug Administration advised OvaScience to file an investigative new drug application for AUGMENT. <u>Id.</u> ¶ 46. Plaintiffs allege that rather than doing so, OvaScience began offering AUGMENT in international locations in early 2014. <u>Id.</u> ¶ 48. By the end of that year, OvaScience was treating 150 patients with AUGMENT. <u>Id.</u> ¶ 55.

On December 17, 2014, OvaScience held its first "Investor Day" and stated that "in 2015 the Company expects at least 1,000 additional patients to be receiving the AUGMENT

---

[1] The court does not reach the alleged failure to plead demand futility.

treatment." Id. ¶ 56. At this time, Dipp stated that OvaScience would charge clinics between $15,000.00 and $25,000.00 for each AUGMENT treatment. Id. ¶ 84. OvaScience's stock price increased by 62.87% after this news. Id. ¶ 59. On January 13, 2015, OvaScience held a secondary public offering, which closed at $50 per share. Id. ¶ 60.

OvaScience released data on the success rate of AUGMENT for the first time on March 17, 2015. Id. ¶¶ 63-64. It reported that 8 patients out of the 34 treated at its clinics in Canada and Turkey (23.5%) maintained a clinical pregnancy. Id. On March 26, OvaScience provided more detail, reporting a success rate of 53% at its Canada clinic based on 9 successful pregnancies out of 17 embryo transfers. Id. ¶ 64. Plaintiffs allege that, when taking into account the 26 total patients receiving AUGMENT at this clinic, the overall success rate would be 27% rather than 53%. Id.

Plaintiffs allege that throughout 2015, OvaScience continuously assured its investors that it would meet its goal of providing 1,000 AUGMENT treatments by the end of the year, including in its 2014 Fourth Quarter Fiscal Results and 2014 Annual Report on March 16, id. ¶¶ 104-05, its 2015 First Quarter Financial Results and an accompanying news report on May 11, id. ¶ 108, and its 2015 Second Quarter Financial Results and an accompanying press release on August 10, id. ¶¶ 113-14. On a conference call on August 11, 2015, when asked about OvaScience's progress as to this goal, Dipp allegedly stated that the company would not release the current number of AUGMENT treatments it was providing until the end of the year. Id. ¶¶ 115-16.

On September 28, 2015, OvaScience reported that it would not meet its 1,000 treatment goal. Id. ¶ 73. Plaintiffs allege that this report caused the company's stock price to drop by 40.98%. Id. According to the amended complaint, OvaScience admitted that it was providing

200 treatments at this time, only 35 of which were commercial treatments. Id. ¶ 74. Plaintiffs allege that OvaScience only recognized revenue on 22 of these 35 commercial treatments. Id. ¶ 147.  Dipp attributed this to unexpected merger and acquisition activity within OvaScience's target clinics. Id. ¶¶ 130-31. Throughout 2015 and 2016, OvaScience only provided 129 treatments for an average price of $7,209.30. Id. ¶ 79. On June 21, 2017, OvaScience announced that it no longer "plann[ed] to focus on" AUGMENT. Id.

II.   Standards

    A.   *12(b)(6) Standard*

To survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 570 (2007)).  Under this rule, the court first "distinguish[es] the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Saldivar v. Racine, 818 F.3d 14, 18 (1st Cir. 2016) (quoting García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013)). Next, the court "determine[s] whether the factual allegations are sufficient to support the reasonable inference that the defendant is liable." Id. (quoting García-Catalán, 734 F.3d at 103). In deciding a motion under Rule 12(b)(6), a court is ordinarily limited to considering "the complaint, documents attached to it, and documents expressly incorporated into it." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 72 (1st Cir. 2014).

    B.   *12(b)(1) Standard*

The proper vehicle for challenging a court's subject matter jurisdiction is Federal Rule of Civil Procedure 12(b)(1). With exceptions not relevant here, in ruling on a Rule 12(b)(1) motion,

the court "credit[s] the plaintiff's well-pleaded factual allegations" and "draw[s] all reasonable inferences from them in [the plaintiff's] favor." Valentin v. Hosp. Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001).

III.   Analysis

Plaintiffs assert violations of Securities Exchange Act Section 14(a) and Rule 14a-9. Plaintiffs contend that in OvaScience's 2015, 2016, and 2017 proxy statements, Defendants "made false and/or misleading statements and/or failed to disclose that: (a) the science behind AUGMENT had not been scientifically validated; (b) the Company was unable to achieve the purported success rates it claimed; (c) the reason why the Company moved its studies outside of the United States; (d) that at all relevant times, the Company's profitability and prospects were false and misleading; and (e) resultantly, the Company lacked adequate internal controls over its publically issued statements and financial reporting . . . ." Am. Compl. ¶ 249. Plaintiffs contend that these material misrepresentations and omissions damaged OvaScience. Id. ¶ 250.

Section 14(a) makes it unlawful to solicit shareholder proxies in violation of any rules or regulations that the Securities and Exchange Commission prescribes. 15 U.S.C. § 78n(a) (2012). Rule 14a-9 prohibits proxy solicitations that are "false or misleading with respect to any material fact, or which omit[] to state any material fact necessary in order to make the statements therein not false or misleading . . . ." 12 C.F.R. § 240.14a–9(a). Congress enacted Section 14(a) to prevent companies "from obtaining authorization for corporate action by means of decepti[on]" and to "prevent[] the recurrence of abuses which had frustrated the free exercise of the voting rights of stockholders."  J. I. Case Comp. v. Borak, 377 U.S. 426, 431 (1964) (citing H.R. Rep. No. 1383 73d Cong., 2d Sess., 13).

To state a claim under Section 14(a), a plaintiff must allege that: "(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was 'an essential link in the accomplishment of the transaction.'" Gen. Elec. Co. v. Cathcart, 980 F.2d 927, 932 (3d Cir. 1992) (quoting Mills. v. Elec. Auto-Life Co., 396 U.S. 375, 385 (1970)). To establish a transactional nexus under the third requirement, a plaintiff must allege that the underlying corporate transaction required shareholder approval. See Va. Bankshares, Inc. v. Sandberg, 501 U.S. 1083, 1085 (1991) ("[A] proxy solicitation is the essential link to a transaction when it links a directors' proposal with the votes legally required to authorize the action required.") (citation omitted).

Plaintiffs' Amended Complaint [#17] does not allege the existence of any corporate transaction that required shareholder approval. Rather, Plaintiffs only allege that OvaScience's "Proxy Statements for 2015, 2016, and 2017 violated Section 14(a) and Rule 14a-9 by omitting material facts," without referencing a specific vote or a specific transaction associated with these proxy statements. Am. Compl. ¶ 249. This allegation is insufficient to establish the transactional nexus required under Section 14(a). See Va. Bankshares, 501 U.S. at 1085. Thus, Plaintiffs have failed to state a claim for which relief may be granted under Section 14(a) and Rule 14a-9. The claim is therefore dismissed.

Once Plaintiffs' federal claim is dismissed, only state law claims remain. Am. Compl. ¶¶ 228-46.  Under Rule 12(b)(1), the dismissal "of a plaintiff's federal claims at the early stages of a suit . . . will trigger the dismissal without prejudice of any supplemental state-law claims" for lack of subject matter jurisdiction.  Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995).  As this case is only at the motion to dismiss stage, and thus well before trial, the

dismissal of the Plaintiffs' only federal claim triggers the dismissal of the remaining state law claims without prejudice. See Cranston Firefighters, IAFF Local 1363, AFL-CIO v. Raimondo, 880 F.3d 44, 52 (1st Cir. 2018) (finding that early dismissal of federal claims at motion to dismiss stage of litigation triggers dismissal of state law claims).

IV.   Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiffs' Amended Complaint [#21] is ALLOWED with prejudice as to the Fifth Cause of Action for Violation of Section 14(a) of the Securities Act of 1934, and without prejudice as to the state law causes of action.

IT IS SO ORDERED

April 13, 2018                                                  /s/ Indira Talwani_____
                                                                United States District Judge